IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| ADVANCED PHYSICAL THERAPY, LLC, ZACHARY BALL, TODD LINEBARGER, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 6:20-cv-03043-RK |
| v. | ) ) ) | |
| APEX PHYSICAL THERAPY, LLC, | ) ) | |
| Defendant. | ) | |

## ORDER

Now before the Court is Plaintiffs' motion for reconsideration (Doc. 218) of the Court's order granting Defendant summary judgment on Plaintiffs' claim for malicious prosecution (Doc. 206 at 7-13, "Summary Judgment Order"). The motion for reconsideration is fully briefed (Docs. 219, 223, 226), and the Court held oral argument on January 18, 2022. In the Summary Judgment Order, the Court found Defendant was entitled to summary judgment as to Plaintiffs' claim for malicious prosecution because the undisputed facts showed it had probable cause to bring the breach-of-contract and tortious-interference claims against Plaintiffs in the prior Illinois lawsuit.[1] After careful consideration, and for the reasons explained below, Plaintiffs' motion for reconsideration (Doc. 218) is **DENIED**.

### I. Legal Standard

The Federal Rules of Civil Procedure do not expressly contemplate a "motion to reconsider." *Discount Tobacco Warehouse, Inc. v. Briggs Tobacco & Specialty Co., Inc.*, No. 3:09-CV-05078-DGK, 2010 WL 3522476, at *1 (W.D. Mo. Sept. 2, 2010) (citation omitted). Plaintiffs rely on Federal Rule of Civil Procedure 54(b), which provides:

> [a]ny order . . . , however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

---

[1] In the Summary Judgment Order, the Court also granted summary judgment in Defendant's favor as to Plaintiffs' claim of abuse of process, and denied summary judgment as to Plaintiffs' claim under the Missouri Computer Tampering Act. Plaintiffs only seek reconsideration of the Summary Judgment Order concerning their malicious prosecution claim, however.

This Court has recognized that federal courts have "general discretionary authority to review and revise [an] interlocutory ruling[] prior to the entry of final judgment." *Mathews v. FieldWorks, LLC*, No. 5:20-06057-CV-RK, 2021 WL 4555254, at *1 n.1 (W.D. Mo. Oct. 5, 2021) (quoting *Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 857 (8th Cir. 2008)). Indeed, district courts have "greater discretion to grant a motion to reconsider an interlocutory order than a motion to reconsider brought pursuant to . . . [Federal Rule of Civil Procedure] 60(b)." *Discount*, 2010 WL 3522476, at *2; *see also Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 903 (8th Cir. 2005) ("Relief under Rule 60(b) is an extraordinary remedy and will be justified only under exceptional circumstances.") (citation and quotation marks omitted).

At the same time, considering the court's "interest in judicial economy and ensuring respect for the finality of decisions, values which would be undermined if it were to routinely reconsider its interlocutory orders," courts in this district reconsider interlocutory orders "if the moving party demonstrates (1) that it did not have a fair opportunity to argue the matter previously, and (2) that granting the motion is necessary to correct a significant error." *Int'l Ins. Co. of Hannover Ltd. v. IEA Renewable Energy, Inc.*, No. 17-06143-CV-SJ-GAF, 2021 WL 6144749, at *2 (W.D. Mo. June 1, 2021) (citation and quotation marks omitted); *see Jacob Rieger & Co., LLC v. Cincinnati Ins. Co.*, No. 20-cv-00681-SRB, 2020 WL 9421046, at *1 (W.D. Mo. Dec. 7, 2020) (applying this standard); *Jordan v. U.S. Dep't of Labor*, No. 18-06129-CV-SJ-ODS, 2019 WL 1118560, at *3-4 (W.D. Mo. Mar. 11, 2019) (same); *Commerce Bank v. U.S. Bank Nat'l Ass'n*, No. 4:13-CV-00517-BCW, 2015 WL 12806575, at *1 (W.D. Mo. Nov. 2, 2015) (same); *Halloran v. Houlihan's Rests., Inc.*, No. 4:11-cv-01026-DGK, 2013 WL 544011, at *2 (W.D. Mo. Feb. 12, 2013) (citing *Conrad v. Davis*, 120 F.3d 92, 95 (8th Cir. 1997)) (other citation omitted).

II. Discussion

Plaintiffs assert several arguments in their motion for reconsideration. First, they argue summary judgment on their malicious prosecution claim was improper and should be reconsidered because there are genuinely disputed facts that preclude summary judgment in Defendant's favor. Plaintiffs also appear to argue the evidence in the summary judgment record does not support a finding as a matter of law that Defendant had probable cause to bring the underlying lawsuit in Illinois for breach of contract and tortious interference with a business expectancy.

First, to the extent Plaintiffs' argument for reconsideration rests on whether particular facts are genuinely disputed (or whether any particular asserted facts, genuinely disputed or not, are

2

material), the Court finds Plaintiffs had ample opportunity to argue this matter previously and did so in their extensive summary judgment pleadings, and therefore the Court will not allow Plaintiffs a further opportunity to re-litigate its summary judgment motion in this manner. *See also Int'l Ins. Co. of Hannover Ltd.*, 2021 WL 6144749, at *2. In the Summary Judgment Order, the Court carefully considered the summary judgment record and the parties' arguments to discern the undisputed material facts in this case and whether Plaintiffs have demonstrated a genuine dispute of material fact exists. Even if the Court were to reach Plaintiffs' arguments for reconsideration, after reviewing the summary judgment record, the findings and conclusions of the Summary Judgment Order would not change.

Plaintiffs also appear to argue in their motion for reconsideration that the undisputed material facts do not entitle Defendant to judgment as a matter of law on their malicious prosecution claim. In the Summary Judgment Order, the Court found Defendant was entitled to judgment as a matter of law as to Plaintiffs' malicious prosecution claim because the undisputed material facts demonstrated it had probable cause to bring claims for breach of contract and tortious interference against Plaintiffs in the Illinois lawsuit. (*See* Summary Judgment Order at 7-13.)

In the context of a malicious prosecution claim based on the filing of a civil lawsuit, probable cause means the filing party had a reasonable belief in the facts on which they asserted their claim and in the validity of the claim itself. *See Hutchison v. Texas Cty., Mo.*, No. 09-3018-CV-S-RED, 2010 WL 11509270, at *7 (W.D. Mo. Dec. 1, 2010) (in this context, probable cause for the initial suit means "'a belief in the facts alleged, based on sufficient circumstances to reasonably induce such belief by a person of ordinary prudence in the same situation, plus a reasonable belief by such person that under such facts the claim may be valid under the applicable law'") (quoting *Kelley v. Kelly Res. Grp., Inc.*, 945 S.W.2d 544, 549 (Mo. Ct. App. 1997)).[2]

In finding that the undisputed material facts demonstrate Defendant had probable cause to bring the breach-of-contract action against Plaintiffs in the Illinois lawsuit, the Court considered the Prime testimonial that Defendant observed on Advanced's website after Ball and Linebarger had left their employment with Defendant. Plaintiffs argue on reconsideration that the Prime

---

[2] In the Summary Judgment Order, the Court noted it need not decide a potential conflict-of-law issue as between Missouri and Illinois law in Count I because the law in both states is the same at least as to the probable cause element of the claim. (Doc. 206 at 7 & 8 n.3.) Plaintiffs do not seek reconsideration of this part of the prior order, and the Court therefore will continue to look to Missouri law on this issue.

3

testimonial does not establish Defendant had probable cause that Ball and Linebarger had breached the confidentiality provision of their employment agreements.[3] The Court disagrees.

As the summary judgment record reflects, it is undisputed in this case that (1) Plaintiffs Ball and Linebarger were the primary contacts for Apex regarding Prime; (2) Apex considered Prime to be a "referral source" as used in the employment agreements; (3) the Prime testimonial Apex observed on Advanced's website after Ball and Linebarger left their employment with Apex was nearly identical to a testimonial Prime had written for Apex just a few months earlier; and (4) the Prime contract with Apex was coming up for renewal. Finally, the confidentiality provision – in whole and as set forth in the Summary Judgment Order – states that Ball and Linebarger "will not make personal use of, nor disclose to any person or entity, any Confidential Information relating to [Apex]," and that "Confidential Information" means:

> Manuals, processes, methods, techniques, templates, documents, electronic files, contracts, Referral Sources (as defined below), projected results, supplier lists (including existing and potential supplier information), pricing, marketing, computer programs, skills, performance specifications, technical and other data, designs, schematics, equipment, set-up, billing, samples, products and services information (including information regarding all existing products and services and any future or planned products or services), financial information and results and other information and know-how relating to or useful in the business or operations of any of the APEX Related Parties.[4]

Even if unartfully conveyed, the Summary Judgment Order found that Defendant had probable cause to assert a breach-of-contract claim against Plaintiffs Ball and Linebarger under

---

[3] The Court acknowledges that the Summary Judgment Order referenced the non-solicitation provision in the context of Count I, as argued by Defendant in seeking summary judgment (*see* Doc. 121 at 7-9), and which Plaintiffs did not squarely address in their suggestions in opposition. (*See generally* Doc. 143 at 127-28.) On reconsideration, Plaintiffs cite Defendant's reply in summary judgment responding to Plaintiffs' statement of additional facts in which it admits for purposes of summary judgment (after objecting as immaterial) the assertion that "Apex did not assert in the Underlying Litigation [(the Illinois Lawsuit)] that Advanced, Ball, or Linebarger has solicited Prime, or that the Prime Testimonial violated the non-solicitation provision of Ball's Employment Agreement." (*See* Doc. 159 at 28-29, ¶ 218.) As Plaintiffs also recognize, though, the Court found Defendants had probable cause to bring the breach-of-contract claim against Plaintiffs based on the confidentiality provision of the employment agreements, even if it also considered the non-solicitation provision despite the apparent admission by Defendant in its reply brief. For purposes of reconsideration, the Court will thus first consider Plaintiffs' argument that Defendant did not have probable cause to bring the breach-of-contract claim against them under the confidentiality provision, considering the Prime testimonial.

[4] Contrary to Plaintiffs' suggestion in their reply brief, it does not appear (nor does it appear any party has ever argued) that the confidentiality provision contains a temporal limitation to its applicability, unlike the non-solicitation provision which, by its terms, concerns only post-termination activities of Ball and Linebarger. (*See* Doc. 226 at 6.)

the confidentiality provision and the Prime testimonial for several reasons. Although the actual text and physical existence of the Prime testimonial is relevant, especially since Plaintiffs admitted in the summary judgment pleadings that it was nearly identical to one that Prime had recently provided for Apex, the testimonial Apex viewed on Advanced's website is important in two other ways. It is evidence of Ball and Linebarger's personal use of a referral source (Prime) in support of their new physical therapy venture, as well as evidence of apparent contact between Prime and Ball and/or Linebarger. Also important is the context in which this occurred. Ball and Linebarger had recently left their employment at Apex to start their own physical therapy business in the same region as Apex, and more importantly, where Apex planned to expand.[5]

As in the summary judgment proceedings, Plaintiffs emphasize that neither Ball nor Linebarger had "requested" the testimonial from Prime or had "contacted" Prime regarding the Prime testimonial, and that the Prime testimonial "related to the work those two individuals had performed for Prime." (*See* Doc. 143 at 36, ¶ 64 response). Regardless of by whom contact was initiated, at the time Apex filed its breach-of-contract claim, the existence of the Prime testimonial on Advanced's website was reasonably indicative of contact between Bell and/or Linebarger and Prime in some form. Additionally, regardless of whether the contact actually occurred while Ball and Linebarger were still employed at Apex (as Plaintiffs seem to suggest in their motion, arguing the testimonial was dated in March 2016, *see* Doc. 219 at 6) or after they had left Apex, it remains that the testimonial by Apex's referral source as to Ball and Linebarger on their new company's website would lead a reasonably prudent ex-employer to believe the confidentiality provision barring personal use of a referral source had been violated. After careful review of the summary judgment record, the Court does not find it erred in concluding Apex had probable cause to bring the breach-of-contract action in the Illinois lawsuit, at a minimum, based on the confidentiality provision in the employment agreement and the Prime testimonial.

Furthermore, the Court does not find significant error in its prior conclusion in the Summary Judgment Order that the undisputed material facts support a reasonable belief by the ex-employer that it had been damaged by this perceived breach of the confidentiality provision. In

---

[5] Plaintiffs maintain, as they did in the summary judgment proceedings, this is "disputed" because Apex did not have any actual locations in Arkansas or could not have actually provided physical therapy services in Arkansas. (*See* Doc. 219 at 6 (citing Doc. 143 at 12, ¶ 21).) This does not raise a genuine question whether Apex, at the time, had been planning or looking into the Arkansas physical-therapy market, however.

5

the Summary Judgment Order, the Court essentially found a reasonably prudent ex-employer would have believed it had been harmed and thus would bring a breach-of-contract claim seeking monetary and injunctive relief (the latter as provided for in the employment agreement itself) based upon the undisputed facts, including: (1) Ball and Linebarger's use of Apex's referral source (as indicated by the Prime testimonial), and (2) that the renewal of Prime's contract with Apex was then in issue (and, after the lawsuit had been filed, Prime did not renew the contract with Apex). Probable cause in this context only requires "an honest belief that purs[u]ing the claim is proper" and "does not require that a plaintiff initiating a suit would have prevailed on its claim." *Impey*, 553 S.W.3d at 353 (citation omitted); *see also Nichols v. Harbor Venture, Inc.*, 284 F.3d 857 (8th Cir. 2002) (probable cause in a malicious prosecution means "a reasonable belief that the claim *may* be valid") (quoting *Holley v. Caulfield*, 49 S.W.3d 747, 751 (Mo. Ct. App. 2001)) (emphasis added). In this way, probable cause to bring a breach-of-contract claim seeking monetary and injunctive relief does not require actual damages or injury but a "reasonable belief the claim may be valid," that is, a reasonable belief the remedy sought (here, damages and injunctive relief under the terms of the employment agreement) may be valid. Plaintiffs' arguments suggest actual harm is required; it is not. The Court does not find significant error and declines to reconsider its ruling on this issue.

Finally, Plaintiffs argue the Court misapplied the law concerning the import of the Illinois court's finding that the confidentiality provision in the employment agreements was unenforceable as a matter of law. Plaintiffs' argument on reconsideration, as in the summary judgment proceedings, appears to be that because the Illinois court held that the confidentiality provision was unenforceable as a matter of state law, Defendant could not have had probable cause to bring a breach-of-contract claim based on that provision (or, stated differently, that this holding establishes Defendant could not have reasonably believed the confidentiality provision was enforceable). The Court previously rejected this argument in the prior order, however: "[E]ven though the district court later held that the restrictive covenants were in fact not enforceable, in the context of a subsequent malicious prosecution claim, this is not dispositive." (Summary Judgment Order at 11 (citing *Impey v. Clithero*, 553 S.W.3d 344, 353 (Mo. Ct. App. 2018).)

In *Impey*, the Missouri Court of Appeals explained, "probable cause does not require that a plaintiff initiating a suit would have prevailed on its claim but instead only requires that a reasonable person have an honest belief that purs[u]ing the claim is proper." 553 S.W.3d at 353

6

(citation omitted). To establish Apex did not have probable cause to believe the confidentiality provision was enforceable (or that it should have known the confidentiality provision was unenforceable) requires something more than the Illinois federal court's judgment that the provision is unenforceable as a restrictive covenant. The only basis Plaintiffs presented on summary judgment that Apex could not have reasonably believed the provision was enforceable was, as Plaintiffs argued, "because it was told prior to the filing of its lawsuit, that the confidentiality provision was unenforceable." (Doc. 143 at 128-29.) The Court explicitly found this assertion was wholly unsupported by the record, however; a finding Plaintiffs do not raise or address in their motion for reconsideration. To that end, the Court found "Plaintiffs have presented no evidence sufficient to raise a genuine issue of fact for a jury to find Apex did not reasonably believe the provisions were unenforceable." Defendants, as summary judgment movants, presented the employment agreements, including the confidentiality provision, the underlying lawsuit, and the undisputed facts as noted in the Summary Judgement Order.

In seeking reconsideration of this issue, Plaintiffs rely on *Brockman v. Regency Financial Corp.*, 124 S.W.3d 43, 47 (Mo. Ct. App. 2004). According to Plaintiffs, *Brockman* established that "the ultimate, legal unenforceability of an agreement upon which a prior claim for breach of contract had been based is, of itself, sufficient to establish lack of probable cause supporting a claim for malicious prosecution." (Doc. 219 at 14 (citing *Brockman*).) The Court does not find *Brockman* controlling here.

In apparent *dicta*[6] the Missouri Court of Appeals recognized the plaintiff in the underlying lawsuit lacked probable cause to file the initial deficiency lawsuit to collect on the alleged default of a vehicle sales contract because it "knew or should have known that the sale . . . was invalid." *Brockman*, 124 S.W.3d at 48. The *Brockman* Court held the initial plaintiff should have known the sale was invalid because the vehicle sale "was void for failure to assign certificate of title" as directed by state statutes. There, state law expressly and explicitly addressed what was required of parties to validly complete the sale of a titled vehicle, including that the transferor or seller must endorse an assignment on the certificate of title and deliver the endorsed title at the time of delivery

---

[6] The *Brockman* Court acknowledged, "the finding of liability for malicious prosecution was not appealed" but that "[r]eview of the probable cause element . . . is helpful as background for our discission of the [appealed] punitive damages issue [that is, whether the evidence was sufficient to justify punitive damages]." 124 S.W.3d at 47.

7

or an otherwise agreed time not to exceed thirty days from time of delivery. Moreover, the state statutes made it "unlawful for any person to . . . sell in this state any vehicle required to be registered, unless . . . there shall pass between the parties a certificate of title with an assignment thereof," and, finally, that "[t]he sale of a vehicle required to be registered . . . without assignment of the certificate of title, is fraudulent and void[.]" *Id.* at 47-48 (quoting K.S.A. § 8-135(c)(6) & 8-135(c)(7)). Plaintiffs' reliance on *Brockman* is not persuasive in this case. Here, Plaintiffs have raised no similar deficiency in the enforceability of the employment agreements or confidentiality provision as that involved in *Brockman*. Whether the confidentiality provision of employment agreements was enforceable is a different consideration than whether the vehicle sale in *Brockman* satisfied the clear statutory directives to validly complete such a sale. The Court is not persuaded by Plaintiffs that *Brockman* requires the Court to reconsider the Summary Judgment Order.[7]

### III. Conclusion

In sum, after carefully reviewing the Summary Judgment Order, the summary judgment record, and the parties' arguments on Plaintiffs' motion for reconsideration, the Court declines to reconsider the earlier Summary Judgment Order. Plaintiff's motion for reconsideration (Doc. 218) is **DENIED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: January 25, 2022

---

[7] Moreover, the case on which Plaintiffs rely for the underlying proposition that ultimately supports this argument – that Defendants are "conclusively presumed to know the law" (Doc. 218 at 15 (quoting *Mo. Highway & Transp. Comm'n v. Myers*, 785 S.W.2d 70, 75 (Mo. 1990)) – only emphasizes this distinction. In *Myers*, like in *Brockman*, the critical issue was whether a party had strictly complied with provisions of a particular statute (and thus whether the party should be estopped from asserting the statutes' bar as a defense). *Myers*, 785 S.W.2d at 73 & 74. Plaintiffs' argument is unpersuasive and does not convince the Court it significantly erred in granting summary judgment in favor of Defendant on this claim.